# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| WINNER ROAD PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BMO HARRIS BANK, N.A., | ) | |
| | ) | No. 4:16-CV-1395 CAS |
| Defendant/Counter-Claimant/ | ) | |
| Cross-Claimant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANN HOWARD & ASSOCIATES, P.C., | ) | |
| | ) | |
| Cross-Defendant | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Cross Defendant Jo Ann Howard & Associates, P.C.'s motion to abstain or, alternatively, motion to abate and motion for more definite statement. Plaintiff Winner Road Properties, LLC and defendant BMO Harris Bank, N.A., oppose the motion. The motion is fully briefed and ripe for review. For the following reasons, the motion is granted in part. The Court will abstain from this case and stay the matter until resolution of the concurrent receivership litigation in Texas state court.

### *Background*

This case arises out of a fraud scheme perpetrated by the Cassity family. The Cassity family owned and operated National Prearranged Services, Inc. ("NPS"), which sold pre-need funeral contracts. The Cassity family also owned two Texas-based life insurance companies, Lincoln Memorial Life Insurance Company ("Lincoln") and Memorial Service Life Insurance Company ("Memorial").

On June 13, 2016, plaintiff Winner Road Properties, LLC ("Winner Road") filed this action in the Circuit Court of Jackson County, Missouri, against Defendant BMO Harris Bank, N.A. ("BMO"), seeking declaratory relief and restitution. BMO removed the case to the United States District Court for the Western District of Missouri on the basis of diversity jurisdiction. The case was transferred to this district on a motion for change of venue pursuant to 28 U.S.C. § 1404(a), based primarily on the fact that there has been ongoing, related litigation in this district, including Jo Ann Howard & Assocs., P.C. v. Cassity, 4:09-CV-1252 ERW (E.D. Mo. filed Aug. 6, 2009) (the "Jo Ann Howard Litigation").

The case at bar case arises from the aftermath of the criminal prosecution of the Cassity family and their scheme to defraud consumers through the sale of pre-need funeral contracts, and the misuse of those proceeds. At issue in this case are three trusts from the Mount Washington Cemetery in Kansas City, Missouri: the Third Amended and Restated Agreement for Mount Washington Cemetery Preneed Trust (the "Merchandise and Services Trust"); the Second Amended and Restated Agreement for Mount Washington Cemetery Endowed Care Trust (the "Endowed Care Trust"); and the Mount Washington Forever, LLC Custody Account (5012) (the "Special Care Trust"), together referred to as "the Mount Washington Trusts."

In its petition, Winner Road alleges that it obtained, via a judicial foreclosure, first priority lien rights against Mount Washington Forever, LLC's real and personal property, and thereby became the successor to the rights and certain obligations of Mount Washington Forever, LLC.[1]

---

[1]Mount Washington Forever, L.L.C. was a Missouri limited liability company that was comprised of a number of entities, including Forever Enterprises, Inc., a Missouri corporation controlled by the Cassity family. Mount Washington Forever, L.L.C. owned the Mount Washington Cemetery.

Thus, according to Winner Road, it is a beneficiary to the Mount Washington Trusts, for which defendant BMO is the trustee. Winner Road claims that as to the Mount Washington Trusts, BMO breached its fiduciary duties, failed to maintain effective operation of the trusts for their intended purposes, failed to ensure that the trust corpuses were maintained, and failed to pay out on contractual obligations. In its petition, Winner Road brings the following claims against BMO: Determination of Rights in and Representation for the Merchandise and Services Trust: Request for Restoration of Trust Assets and Other Relief (Count I); Determination of Rights in and Representation for the Endowed Care Trust and Request for Trust Administration Rulings (Count II); Determination of Rights in and Representation for the Special Care Trust and Request for Trust Administration Rulings (Count III); and Petition for Restitutionary Award Against Trustees for Breaching Trustee Duties Relating to the Mount Washington Trusts (Count IV). Winner Road seeks to recover alleged losses to the three trusts, requests trust administration rulings with regard to the trusts, and further requests that BMO be removed as trustee of the trusts.

In response to plaintiff's petition, BMO filed a motion to dismiss. BMO argued Counts I and IV of the petition were barred by the doctrine of res judicata, because BMO had already litigated and settled the two claims in the Jo Ann Howard Litigation. BMO also argued that Counts I, III, and IV were time barred, and Count IV should be dismissed because it fails to state any duty BMO owed to Winner Road. The Court granted BMO's motion to dismiss with regard to Counts I and IV. Doc. 84.

As background, in 2008 a Texas court in State of Texas v. Memorial Service Life Insurance Company, et al., No. D-1-GV-08-000945 (250th Dist. Ct., Travis Cnty, Tex. filed Sept. 12, 2008) (the "Texas Receivership Litigation"), entered an order approving a joint liquidation plan with

3

respect to Lincoln, Memorial, and NPS.  Doc. 91 at 35.  That plan and underlying Texas statutes established the authority of the Special Deputy Receiver ("SDR"), Jo Ann Howard & Associates, P.C. ("Jo Ann Howard"), to collect monies and pay creditors as a result of the Cassity fraud scheme. Id.  Under the liquidation plan, state guaranty associations, which had guaranteed payments under the insurance policies, were assigned claims by present or future recipients of benefits under the insurance policies in trust accounts, including the Merchandise and Services Trust.  Doc. 51, Ex. H at 13-14.

From the record, it appears to be undisputed that assets in the Merchandise and Services Trust from the sale of pre-need funeral contracts were substituted for life insurance policies issued by Lincoln, which is now insolvent.  Doc. 151, Ex. 3 at 9. The Cassity family was allowed to withdraw trust funds for the purchase of Lincoln Memorial life insurance policies, which were then listed as non-cash assets of the trust.  The SDR, as the receiver for Lincoln, continues to administer life insurance claims submitted under the Merchandise and Services Trust.  Doc. 151, Ex. 9 at 1-2.

The state guaranty associations and the SDR brought the Jo Ann Howard Litigation, a $600 million lawsuit, in this District Court against trustee bank defendants, including BMO and its predecessors.  The SDR is the court-appointed representative to bring claims on behalf of funeral homes and consumers for losses under the trusts arising from alleged breaches of fiduciary duty by BMO. The Jo Ann Howard plaintiffs' claims for breach of fiduciary duty, negligence, and gross negligence by trustee banks were brought by "the individual state guaranty associations from Missouri . . . and the SDR on behalf of NPS, funeral homes, and consumers."  Doc. 84 at 10.  The Jo Ann Howard Litigation explicitly included claims against bank trustees for losses to the Mount Washington Merchandise and Services Trust.

The plaintiffs in the <u>Jo Ann Howard Litigation</u> and BMO reached a settlement agreement, and on December 16, 2014, they filed a stipulation of dismissal with prejudice in that case. In ruling on BMO's motion to dismiss, the undersigned found that the <u>Jo Ann Howard Litigation</u> dismissal was a final judgment on the merits, the SDR was in privity with Winner Road and Winner Road's interests were properly represented by the SDR, and both suits were based on the same claims and causes of actions. Doc. 84. The Court, therefore, found <u>res judicata</u> applied and dismissed Counts I and IV of Winner Road's petition. Count II, Determination of Rights in and Representation for the Endowed Care Trust and Request for Trust Administration Rulings, and Count III, Determination of Rights in and Representation for the Special Care Trust and Request for Trust Administration Rulings, remain in this suit.

BMO answered the petition and filed a counterclaim against Winner Road. In its counterclaim, BMO admits that it is trustee for the Mount Washington Trusts but asks, pursuant to Mo. Rev. Stat. § 456.2-202, that the Court approve BMO's accounts, remove BMO as a trustee, and approve the appointment of a successor trustee for the three Mount Washington Trusts. BMO also asks that the Court resolve whether Winner Road is the only beneficiary of three Mount Washington Trusts, and whether BMO must release the trusts from any purported freeze by virtue of ongoing litigation in the <u>Texas Receivership Litigation</u>.

According to BMO, representatives of the SDR have instructed BMO's representatives that the liquidation order in the <u>Texas Receivership Litigation</u> operates as a freeze on all accounts associated with the Mount Washington Cemetery, because they are potential property of the estates of the three Cassity-owned businesses. Doc. 98 at 4-5. BMO complied with the SDR's instructions

and froze the Mount Washington Trusts. Despite Winner Road's repeated requests, BMO has not allowed withdrawals from or deposits to any of the trust accounts.

On May 31 , 2018, defendant BMO moved for leave to join Jo Ann Howard & Associates, P.C. as a necessary party and cross defendant. BMO maintains that the dispute between BMO and Winner Road cannot be resolved without the involvement of the SDR.[2] BMO's motion, which was unopposed, was granted, and BMO filed an Amended Counterclaim and Cross-claim. BMO alleges in its pleadings that "[a]s a result of the litigation concerning the three trusts at issue, their administration has become the subject of substantial controversy between BMO and Winner Road, and between Winner Road and the SDR. Moreover, BMO cannot accede to Winner Road's demands without a substantial controversy and dispute with, and potentially liability to, the SDR." Doc. 116 at 12. BMO further alleges that it "hopes to obtain from this Court relief that will fully discharge and terminate BMO's responsibility with respect to the trusts at issue, and order their transition to a successor trustee," and that it is petitioning the Court "for instructions for the administration of the trusts." Id. BMO brings the following claims against Winner Road and the SDR: Petition for Approval of Accounts, Removal, or Instructions for the Administration of the Mount Washington Preneed Trust (Count I); Petition for Approval of Accounts, Removal, or Instructions for the Administration of the Mount Washington Endowed Care Trust (Count II); and Petition for Approval of Accounts, Removal, or Instructions for the Administration of the Mount

---

[2]On June 19, 2018, Winner Road and BMO participated in court-ordered mediation. In the ADR Compliance Report, the neutral noted "the parties achieved a settlement that is contingent upon acquiescence by the Special Deputy Receiver, which the parties believe they will obtain and are working toward." Doc. 125.

Washington "Special Care Trust" Custody Account (Count III).   BMO also brings a claim for attorneys' fees pursuant to Mo. Rev. Stat. § 456.10-1004 against Winner Road.

Winner Road filed an answer to BMO's counterclaim.  The SDR entered an appearance and filed a motion to abstain or, in the alternative, motion to abate and motion for more definite statement, which is the motion at bar.   The SDR argues that BMO is seeking relief from an order entered in the Texas Receivership Litigation.  The SDR points out that it is the appointed receiver of insurance entities that are subject to delinquency proceedings in the Texas Receivership Litigation. The SDR argues that Texas has established a complex regulatory scheme for the liquidation of insolvent insurance entities, and the resolution of this case requires specialized knowledge and the application of complicated state law and, therefore, the Court should abstain pursuant to Burford v. Sun Oil Company, 319 U.S. 315 (1943).  Alternatively, the SDR argues that this case should be abated because BMO failed to seek relief from the automatic stay that is in place in the Texas Receivership Litigation.  Finally, in the event the Court denied the motions to abstain or abate, the SDR moves that the Court order BMO to provide a more definite statement of its claims and the relief it seeks.

## *Discussion*

The SDR moves that the Court abstain from hearing this case under the discretionary abstention doctrine first articulated in Burford, 319 U.S. 315.  The Burford doctrine arose in a case challenging the Texas Railroad Commission's decision to grant the defendant, G.E. Burford, drilling rights on a plot of land on the East Texas Oil Field. Id. at 317.  Plaintiff, Sun Oil Company, sued the defendant in federal court asserting a constitutional due process claim, as well as state law claims. Id. Under Texas law at the time, the Texas Railroad Commission was charged with administering

oil and gas regulations, which including the spacing of oil wells and the amount of production.  Id. at 320.  The endeavor was complicated and required a comprehensive scheme, because oil wells tap into a common reservoir under the surface and can drain oil located miles away under property owned by other entities.  Id. at 319.  Because there was a significant amount of litigation concerning oil wells, Texas had developed a special, exclusive system of judicial review for such cases.  Id. at 325.  The Supreme Court found Texas state courts' review of commission decisions to be "expeditious and adequate," id. at 327, and because federal court review alongside state-court review had repeatedly led to "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy," id., the Court concluded that "a sound respect for the independence of state action requir[ed] the federal equity court to stay its hand." Id. at 334.

This doctrine of abstention has become known as the Burford doctrine.  Under the doctrine, federal courts "must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361, (1989) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)).

The Burford doctrine is applicable only when the relief being sought is "equitable or otherwise discretionary." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996).  In those cases involving damages actions, federal courts are to "withhold action until the state proceedings

8

have concluded." Id. at 730. Federal courts applying abstention principles in damages actions are to enter a stay, and not dismiss the action altogether. Id.

The Burford doctrine is "'the exception and not the rule,' and should be used 'only in the extraordinary and narrow circumstances where it would clearly serve an important countervailing interest.'" Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1506 (8th Cir. 1992) (quoting Bilden v. United Equitable Ins. Co., 921 F.2d 822, 826 (8th Cir. 1990)). "[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush, 517 U.S. at 716. "While Burford is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." New Orleans Pub. Serv., 491 U.S. at 362. Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River, 424 U.S. at 813. "Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action,' that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." Quackenbush, 517 U.S. at 728 (quoting Burford, 319 U.S. at 334).

The Eighth Circuit has addressed the application of the Burford abstention doctrine in the context of insurance insolvency where, like here, there was concurrent receivership litigation pending. See Wolfson v. Mutual Benefit Life Ins. Co., 51 F.3d 141 (8th Cir. 1995), abrogated on other grounds by Quackenbush, 517 U.S. at 711). The Eighth Circuit in Wolfson wrote that determining whether abstention applies "is inherently a fact-specific inquiry," and while the lower courts are to consider and analyze the facts of each case, there are "at least three major categories

of cases" involving "insurer insolvency abstention issues." Id. at 145. The Eighth Circuit described

these categories as follows:

> The first category consists of suits by the insolvent insurer's policyholders or policy beneficiaries against third parties in which the defendant, often supported by the insurer's receiver, urges abstention because recovery by the plaintiff may reduce the receiver's ability to recover on behalf of the insurer's insolvency estate. Not surprisingly, abstention is usually (but not always) denied in such cases, particularly where a federal statutory claim is being asserted. The basic reason not to abstain in most such cases is that the state court insolvency proceeding, unlike the federal court, cannot afford plaintiff a remedy against a third party.

> The second category consists of cases in which the insolvent insurer or its receiver has asserted a claim in the federal action which, if successful, will enhance the insolvent's estate . . . . Cases in this second category have arisen in a variety of contexts. The abstention issue often turns on the relative importance to the state court insolvency proceeding of litigating a particular claim in that proceeding. That can vary greatly, and therefore the abstention rulings in these cases quite properly defy generalization.

> [The] third broad category, [consists of] claims by policyholders, policy beneficiaries, and other creditors against a now-insolvent insurer. The first issue in considering abstention in this situation is whether the state court insolvency proceeding provides a mandatory special procedure to adjudicate claims against the insolvent and then distribute the insolvent's inadequate assets among the various classes of successful claimants. If there is such a concurrent state court procedure purporting to bind the federal court plaintiff, that brings into play what is generally referred to as the Colorado River abstention doctrine, which turns on "considerations of wise judicial administration ... conservation of judicial resources and comprehensive disposition of litigation" that are relevant whenever federal and state courts are contemporaneously asked to exercise jurisdiction over the same dispute. Colorado River, 424 U.S. at 817.

Wolfson, 51 F.3d at 145 (citations omitted).

The case at bar does not fit neatly into any of these categories. This case started out in the

first category. Winner Road, which alleges it is a beneficiary to the Mount Washington Trusts,

brought claims against BMO, a third party, seeking to recover alleged damages to the three trusts.

From the beginning the three trusts were involved in the Texas Receivership Litigation. BMO,

however, did not argue that the Court should abstain from hearing claims because the trusts were subject to receivership proceedings in the <u>Texas Receivership Litigation</u>.[3] Instead, BMO moved for dismissal, arguing that disputes involving Winner Road and the Merchandise and Services Trust had been resolved in the <u>Jo Ann Howard Litigation</u>. The Court agreed with BMO and dismissed the two counts against BMO involving the Merchandise and Service Trust.

In its counterclaim/cross claim, BMO has revived disputes involving the Merchandise and Service Trust.[4] Count I of BMO's counterclaim/cross claim is "Petition for Approval of Accounts, Removal, or Instructions for the Administration of the [Merchandise and Service Trust]." BMO alleges that the SDR and Winner Road claim competing interests in the assets of the Merchandise and Service Trust: "In light of the Jo Ann Howard litigation, the joint liquidation plan entered in the [<u>Texas Receivership Litigation</u>], and the allegations contained in Winner Road's complaint, the correct course for administration of the [Merchandise and Service Trust], and the distribution of trust assets therein, are currently unresolved and disputed by the parties." Doc. 116 at 13. BMO asks the Court to determine whether Winner Road or the SDR is "the only statutory beneficiary and representative" of the Merchandise and Service Trust; and whether "BMO may, or must, release the [Merchandise and Service Trust] from any purported hold, stay, or freeze asserted by the SDR by

---

[3]Despite having knowledge of the case at bar and Winner Road's claims concerning the Mount Washington Trusts, the SDR did not move to intervene arguing the three trusts at issue were subject to the liquidation order in the <u>Texas Receivership Litigation</u>. Instead, the SDR moved that the court in the <u>Texas Receivership Litigation</u> enjoin Winner Road from pursuing the case before this Court, a motion the Texas court denied on the grounds that the claims were not <u>in rem</u> or <u>quasi in rem</u>. <u>See</u> discussion <u>infra</u> at 17, n.4.

[4]According to filings with this Court, Winner Road continues to be under the impression that the Court's Memorandum and Order granting BMO's motion to dismiss on the grounds of <u>res judicata</u> did not extinguish its claims relating to the administration of the assets in the Merchandise and Services Trust. Doc. 139 at 4-5; Doc. 140 at 11-12.

virtue of Texas court orders; or whether BMO to the contrary must honor the instructions of the SDR with respect to the [Merchandise and Service Trust]." Id. BMO's claims are not limited to the Merchandise and Services Trust. In Counts II and II, BMO brings nearly identical claims regarding the Endowed Care Trust and the Special Care Trust, respectively. Alleging that the three trusts may be subject to orders in the Texas Receivership Litigation, BMO is asking, among other things, that the Court determine the beneficiaries of the three trusts. BMO also seeks approval of its accounts and the appointment of a successor trustee, as well as attorney's fees against Winner Road.

Unlike Winner Road's claim of breach of fiduciary duties, BMO's counterclaims and cross-claims are not brought in personam, that is, BMO is not seeking to "impose a personal liability or obligation on one person in favor of another." Hanson v. Denckla, 357 U.S. 235, 246 (1958). Instead BMO brings its claims in rem and quasi in rem. "A judgment in rem affects the interests of all persons in designated property. A judgment quasi in rem affects the interests of particular persons in designated property." Id. "The key to determining whether an action is in rem or in personam is 'whether the object of the litigation is to establish ownership rights in a defined property or simply to recover value from a certain defendant.'" Midwest Employers Cas. Co. v. Legion Ins. Co., No. 4:07-CV-870 CDP, 2007 WL 3352339, at *2 (E.D. Mo. Nov. 7, 2007) (quoting Koken v. Amcomp Preferred Ins. Co., 2004 U.S. Dist. LEXIS 5280, at *11 (M.D. Pa. Mar. 24, 2004)). Here, BMO is not seeking the recovery of damages, but rather is asking the Court to determine who are the beneficiaries of the three Mount Washington Trusts and to approve of its accountings. These claims are in rem and quasi in rem.

It is significant that BMO's claims are in rem and quasi in rem because at least one of the trusts that is the subject of BMO's in rem and quasi in rem claims, the Merchandise and Services

Trust, is under the jurisdiction of the <u>Texas Receivership Litigation</u>. It is undisputed that invoking its authority under the <u>Texas Receivership Litigation</u>, the SDR has instructed BMO to place a freeze on all three of the Mount Washington Trusts because they are part of the receivership estate. BMO states that it takes no position as to whether the freeze on the Mount Washington Trusts is justified, but in view of the SDR's powers pursuant to <u>Texas Receivership Litigation</u>, BMO asserts that it considers itself obligated to honor the SDR's instruction, barring any other court order or release stating otherwise.

There is some evidence in the record that in filings in the <u>Texas Receivership Litigation</u>, the SDR has disclaimed interest in the Endowed Care Trust and the Special Care Trust. There is no evidence in the record, however, that the SDR has disclaimed interest in the Merchandise and Services Trust, and it is the SDR's position, as well as BMO's, that the Merchandise and Services Trust belongs to the receivership estate. The Court has not been provided with the current assets and valuation of the Merchandise and Services Trust, although it appears to be undisputed that the vast majority of the assets in the Merchandise and Services Trust are or were life insurance policies issued by Lincoln, the company for which the SDR is the receiver. In an affidavit submitted to the Court, Ms. Jo Ann Howard attests that under the Liquidation Plan approved in the <u>Texas Receivership Litigation</u>, the SDR continues to administer life insurance policy claims on behalf of the guaranty associations submitted under the Merchandise and Services Trust. According to the SDR, "[I]t is estimated that the guaranty associations have over $4.6 million in remaining liability for their Covered Obligations arising under the Liquidation Plan for policies of insurance held in the Merchandise and Services Trust." Doc. 151, Ex. 9 at 3. "At no time has the Receivership Court

authorized the release of the Merchandise and Services Trust from its status as property of the estate." Id.

Where a judgment sought is on a claim that is strictly in personam, "both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939); see also Penn Gen. Cas. Co. v. Commonwealth of Penn. ex rel. Schnader, 294 U.S. 189, 195 (1935) (same); Bassler v. Arrowood, 500 F.2d 138, 141 (8th Cir. 1974) ("When the action is clearly in personam, federal courts have the power to adjudicate the controversy."). But where one court has acquired jurisdiction over a property, a second court may not exercise in rem or quasi in rem jurisdiction over the same property. Princess Lida, 305 U.S. at 466. The general rule is that "if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other." Id. See also Penn Gen. Cas. Co., 294 U.S. at 195; Madewell v. Downs, 68 F.3d 1030, 1041 n.13 (8th Cir. 1995).

The Princess Lida doctrine is applicable to both federal and state courts, and "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other." 305 U.S. at 466. Furthermore, it "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." Id. (emphasis added). The doctrine is the well-settled rule "with respect to suits in equity for the control by

receivership of the assets of an insolvent corporation." Penn Gen. Cas. Co., 294 U.S. at 195. See also Leggett v. Green, 188 F.2d 817, 819 (8th Cir. 1951) (where the state court had first acquired control and jurisdiction of estate of insolvent insurance company, federal courts could not remove estate from state court's jurisdiction); Bryan v. Welsh, 72 F.2d 618, 201 (10th Cir. 1934) (where a receiver had been appointed for a trust in state court, federal court could not take possession of the trust estate from the state court); Safeway Trails, Inc. v. Stuyvesant Ins. Co., 211 F. Supp. 227, 230 (M.D. N.C. 1962) (where state court had appointed receiver to marshal all assets of insolvent insurer, federal court lacked jurisdiction to hear declaratory judgment suit by insureds against reinsurers to have reinsurance proceeds paid directly to insureds rather than the receiver). "The doctrine is necessary to avoid unseemly and unmanageable conflicts between courts of concurrent jurisdiction." Matter of Tr. Created by Hill on Dec. 31, 1917 for Ben. of Schroll, 728 F. Supp. 564, 566 (D. Minn. 1990) (declining to hear in rem claims involving a trust dispute).

Because the trusts at issue in this suit are subject to the Texas Receivership Litigation and in rem and quasi in rem claims are being brought with regard to these trusts, the Court finds that both the principles of Burford and Princess Lida are relevant in this case. "The considerations weighed in each branch of abstention are not mutually exclusive, and courts should not limit the abstention inquiry to whether the case at bar fits neatly into the most analogous line of prior cases." Wolfson, 51 F.3d at 145–46.

Having considered the facts of this case and applicable law, the Court finds that it must abstain from hearing the dispute at this time. First, this suit has in rem and quasi in rem claims involving property that is under the jurisdiction of a Texas state court. Winner Road originally brought in personam claims against BMO for damages arising from alleged mismanagement of the

Mount Washington Trusts. BMO successfully argued that joining the SDR as a party to this suit was necessary in order to resolve the dispute between BMO and Winner Road, an argument Winner Road did not oppose. BMO brought the SDR into this suit with in rem and quasi in rem claims, which ask this Court to determine ownership – in other words, the beneficiaries of the trusts – as well as approval of BMO's accounting. While Winner Road did not bring these claim, it is eager for the Court to decide them as well. This case is no longer solely an in personam suit seeking to hold an entity personally liable; the parties are asking the Court to make rulings regarding ownership and the distribution of trust assets. The Court is being called on to decide whether the trusts at issue are subject to the order staying litigation in the Texas Receivership Litigation, and whether Winner Road is the beneficiary of trusts or whether the SDR, the designated receiver in Texas Receivership Litigation, is the proper beneficiary. In effect, the Court is being asked to take control of and make ownership determinations about property that is under the jurisdiction of the receivership court in Texas – determinations that could affect policy holders for whom the receivership was set up to protect. As such, the Court finds it must yield to the jurisdiction of the Texas state court in the Texas Receivership Litigation.[5] See Princess Lida, 305 U.S. at 466; Leggett, 188 F.2d at 819.

Second, Texas has developed an exclusive and complex statutory scheme to distribute the assets of insolvent insurers so as to protect policy holders and other interested parties. This Court's

---

[5]The Texas court recognized the doctrine articulated in Princess Lida when it ruled on the SDR's motion to enforce the Permanent Injunction and Automatic Stay with regard to the present litigation. On May 3, 2017, prior to the filing of BMO's cross-claims and counterclaims, the Texas court held that Winner Road could pursue in personam claims against BMO, but not in rem or quasi in rem claims. Doc. 98, Ex. 2 at 2. Recognizing that some of Winner Road's claims might "straddle" the categories, the Texas court deferred to this Court to make that determination and manage its docket. Id. With the filing of BMO's cross-claims and counterclaims, there can be no doubt that in rem or quasi in rem claims are being asserted and that Princess Lida applies.

review of the dispute at hand would encroach on Texas's comprehensive receivership scheme and potentially frustrate the interests of those the scheme was designed to protect. The court in the <u>Texas Receivership Litigation</u> has taken control of Lincoln's, Memorial's and NPS's remaining property, which includes, at a minimum, the Merchandise and Services Trust. Exercising jurisdiction in this case could compromise Texas's interest in the successful rehabilitation of the insolvent estates. As the Court in <u>Wolfson</u> noted, "Reducing and deferring [ ] expenses in an insolvency proceeding can greatly assist rehabilitation." 51 F.3d at 146. Here, under the liquidation plan in the <u>Texas Receivership Litigation</u> there is a comprehensive scheme for making claims to Lincoln's, Memorial's, and NPS's assets. "While 'piecemeal litigation' is a fact of life for solvent insurers, the efficient adjudication and satisfaction of claims against an insolvent insurer is best achieved in a single comprehensive proceeding." <u>Id.</u> Going forward in this case risks conflicting rulings and creates piecemeal litigation.

Third, there are no constitutional or federal issues in involved in this suit. The claims are state law claims and jurisdiction in this Court is based on diversity of citizenship. <u>Id.</u>

Finally, there is the relative progress of the suits. <u>Id.</u> Last summer, Winner Road and BMO reached a settlement with regard to Winner Road's claims against BMO, although it was noted in the Alternative Dispute Resolution Compliance Report that the settlement was "contingent upon acquiescence by the [SDR] . . . ." Doc. 125. The SDR was joined in this suit as a necessary party and cross-claims were assert against it by BMO. With the addition of the new defendant, this suit is essentially at the beginning stages of the litigation.

The Court also finds that the present case is distinguishable from cases in which the Eighth Circuit has ruled abstention under <u>Burford</u> was not warranted. For example, in <u>Melahn v. Pennock</u>

Insurance, claims were brought by a receiver of an insolvent insurance company to recover unearned commissions on premiums from another insurance company. 965 F.2d at 1498. The Eight Circuit held there was no need to abstain in the case because the moving party had not shown how the exercise of federal jurisdiction "would in any way frustrate the state's interests" based on the facts of the case. Id. at 1507. Unlike the present action, the claims were in personam, as the receiver in Melahn was seeking damages from a third party that would enhance the receiverships assets. Id. at 1498. The parties were not asking the court to make determinations about a property that was already part of the receivership estate.

This case is also distinguishable from Bilden v. United Equitable Insurance Co., 921 F.2d at 822. In Bilden an insured prevailed at trial against an insurance company on a claim for damages for breach of an insurance contract. Id. at 824. While the case was on appeal, the insurance company was placed into receivership. The insurance company argued to the Eighth Circuit that the court should abstain under Burford. Id. at 825. The Eighth Circuit found Burford abstention was not warranted because the stay order from the receivership court did not apply to a suit that was filed 18 months before the order was issued. Id. Furthermore, it was the insurance company, not the plaintiff, that had instigated the appeal. These facts are simply not analogous to the case at hand.


In sum, the Court has carefully weighed the factors in this case, and despite the strong presumption in favor of retaining jurisdiction, finds that abstention is warranted under Burford and Princess Lida. There is a complex state administrative processes in place in Texas overseeing the disbursement of the remaining assets of the three insolvent insurance companies. Deciding the issues before the Court in this dispute would encroach on that process and potentially frustrate the

interests the <u>Texas Receivership Litigation</u> was designed to protect. Staying this action will also conserve judicial resources and avoid conflicting rulings and piecemeal litigation, which furthers the interest of cost-savings in insolvency proceedings. But most importantly, the Texas state court in the <u>Texas Receivership Litigation</u> has already taken jurisdiction of at least one of the trusts at issue in this case. This suit has <u>in rem</u> and <u>quasi in rem</u> claims involving the same property, therefore, this Court must yield to the jurisdiction of the Texas state court. For these reasons and those discussed above, the Court finds it is appropriate to abstain from hearing this case to avoid interference with the insolvency proceedings in the <u>Texas Receivership Litigation</u>.

The SDR asks the Court to abstain from hearing this case and to dismiss the claims against it. This suit, however, involves claims for declaratory relief as well as for damages. Therefore, under <u>Quackenbush v. Allstate Insurance Company</u>, the Court finds it is appropriate to stay this action rather than dismiss it. <u>See</u> 517 U.S. 706, 721 (1996) ("We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court. By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.").

The Court concludes this case should be administratively closed pending resolution of the relevant matters in the <u>Texas Receivership Litigation</u>. The case may be reopened upon motion of either party, which shall include:

(a) A brief statement of the facts, procedural history, and resolution of the issues in the <u>Texas Receivership Litigation</u>;

(b) the issues, if any, remaining for determination;

(c) whether a Rule 16 scheduling conference is requested;

(d) whether it is anticipated that there will be pretrial motion practice, including the filing of dispositive motions;

(e) when it is reasonably likely this case would be ready to proceed to trial; and

(f) the estimated length of trial.

In the event the parties are able to reach a settlement of this matter during the period of administrative closure, the parties may file a stipulation for dismissal, a motion for leave to voluntarily dismiss, or a proposed consent judgment, without first moving to have the case reopened.

As the Court finds that it should abstain from hearing this dispute pursuant to Burford and Princess Lida, the Court need not address the SDR's motion to abate and motion for more definite statement, and denies the same as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Cross Defendant Jo Ann Howard & Associates, P.C.'s Motion to Abstain or, Alternatively, Motion to Abate and Motion for More Definite Statement is **GRANTED, in part.** Consistent with the terms of this Memorandum and Order, Cross Defendant Jo Ann Howard & Associates, P.C.'s motion to abstain is **GRANTED** to the extent that the Court shall stay this matter pending resolution of the relevant matters in the Texas Receivership Litigation. In all other respects, the motion is **DENIED as moot.** [Doc. 131]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **administratively close** this file, which shall be subject to reopening on motion as set forth in this Memorandum and Order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this ___3rd____ day of June, 2019.